(796 P.2d 1046)

No. 64,165

KANSAS STATE UNIVERSITY, *Appellant,* v. KANSAS COMMISSION ON CIVIL RIGHTS, *Appellee.*

Opinion filed February 9, 1990.

*Dorothy L. Thompson*, associate university attorney, Kansas State University, of Manhattan, for appellant.

*Arthur W. Solis*, senior legal counsel, Kansas Commission on Civil Rights, for appellee.

Before BRAZIL, P.J., M. KAY ROYSE, District Judge, assigned, and JAMES J. NOONE, District Judge Retired, assigned.

NOONE, J.: Kansas State University (KSU) appeals a trial court ruling upholding the order of the Kansas Commission of Civil Rights (KCCR), which found KSU violated the Kansas Act Against Discrimination (K.S.A. 44-1001 *et seq.*) and the Kansas Age Dis-

crimination in Employment Act (K.S.A. 44-1111 *et seq.*) when it failed to hire Frederick O'Neill (complainant) for a position created in 1984 of certification officer of teacher education (CO) because of his sex (male) and age (59). Jerry G. Horn testified the position announcement, which was approved by the affirmative action office and advertised in a variety of appropriate sources, described the principal duties of the CO to include, among others: examining programs and transcripts of students to insure requirements were completed to meet certification, maintaining certification records, advising undergraduate teacher education students, analyzing transcripts of students who were not in teacher education but who wished to be, and serving as a college of education representative within the university and across the state.

The position required a Bachelor of Science degree, with a Masters of Science degree preferred, in education or a closely related area. Other qualifications included knowledge and experience in record keeping and reporting procedures, ability to advise undergraduate students and/or teach in an area in career related teacher education programs, written/oral communication and public relations skills, and knowledge of office administrative practices.

Seventy-eight persons applied for the position, thirty-eight female and forty male. The search committee selected four of these as finalists to be interviewed, including complainant. Candace Hayden, approximately 20 years younger than complainant and female, was hired. O'Neill filed a complaint with the KCCR, contending that Hayden was less qualified than he and that adverse inquiries and comments were made about his age during interviews. O'Neill also complained that Margaret Bloomquist, director of the center for student services whose pending retirement led to the creation of the CO position, had indicated a preference for a female during the interview.

A hearing on O'Neill's complaint was held before a KCCR hearing officer. At that hearing, evidence was admitted which showed that O'Neill had applied for, but was not selected for, two other KSU positions prior to his nonselection for the CO position. KSU objected to the introduction of this evidence. The hearing officer's opinion was approved by a KCCR chairperson.

The KCCR found in favor of complainant, citing K.S.A. 44-1009(a)(1) and 44-1113(a)(1), and awarded him $42,009.43 in lost wages. Rehearing was denied, and KSU appealed to district court. After a de novo review of the record, the trial court affirmed the award of the hearing officer. A new trial was denied, and KSU perfected the present appeal.

The scope of review of a trial court's decision concerning opinions rendered by the KCCR has recently been addressed by the Kansas Supreme Court. In *Nurge v. University of Kansas Med. Center*, 234 Kan. 309, Syl. ¶ 6, 674 P.2d 459 (1983), the court held that, when a district court is reviewing the proceedings of the KCCR, the duty of the district court is to "conduct an independent and thorough examination of the record and make independent findings of fact and conclusions of law." In that case, the district court had compelled witnesses to re-testify, thereby disregarding the record on review. The Supreme Court found there was no statutory authority for such a departure from the record of the KCCR. 234 Kan. at 317. The court further held that "[f]ailure to consider the entire record . . . constitutes reversible error." 234 Kan. at 318.

In *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, 697 P.2d 52 (1985) (*Woods II*), the Supreme Court addressed the scope of appellate review for appeals from a trial court's review of KCCR orders. In that case, appellant Midwest argued that, since the trial court under *Nurge* must make its review from the record rather than from live testimony, the appellate scope of review should be different. The court rejected that argument, stating:

"We conclude, therefore, the general rule relative to appellate review applies in this case. Thus, where the trial court has made findings of fact and conclusions of law in a trial de novo arising from a Kansas Commission on Civil Rights proceeding, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." 236 Kan. at 736.

Further, the *Woods II* court stated: "Under the proper scope of review previously discussed, our role on appeal is to determine whether there is substantial competent evidence to support the findings of discriminatory conduct and the conclusion the requisite prima facie case had been presented." 236 Kan. at 737.

The court also reiterated its holding in *City of Council Grove v. Ossmann*, 219 Kan. 120, 546 P.2d 1399 (1976), that "the findings adopted by the trial court will not be set aside unless they are clearly erroneous." 236 Kan. at 736.

It is clear that this court's scope of review is to determine if, when viewing the evidence in the light most favorable to complainant, there is substantial competent evidence to support the trial court's findings of fact and whether these findings are sufficient to support the trial court's conclusions of law. " '[S]ubstantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

The first issue presented is whether the trial court erred in its admission and treatment of evidence concerning complainant's nonselection for earlier KSU positions. The KCCR hearing officer admitted the evidence, stating that KSU's objection went to its weight rather than its admissibility. The trial court, in its findings, noted it allowed such evidence as "reasonable background facts."

It is uncontroverted that when O'Neill filed his complaint with the KCCR he did not allege discrimination in his nonselection for either of the two prior positions. Both positions were filled more than six months before O'Neill filed his complaint. K.S.A. 1989 Supp. 44-1005(i) requires the timely filing of complaints: "Any complaint filed pursuant to this act must be so filed within six months after the alleged act of discrimination, unless the act complained of constitutes a continuing pattern or practice of discrimination in which event it will be from the last act of discrimination." Further, O'Neill did not complain of a continuing pattern or practice of discrimination against males or older individuals in his complaint.

KSU contends under *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 648 P.2d 234 (1982) (*Woods I*), that, unless O'Neill was making a case for a continuing violation, the evidence of nonselection should not have been admitted because six months had passed and O'Neill had not filed a complaint on his failure to secure those jobs. In *Woods I*, the court held:

"We hold a charge of discrimination is required by K.S.A. 44-1005 to be filed with the Kansas Commission on Civil Rights within six months after

the alleged act of discrimination occurred unless the act complained of constitutes part of a continuing pattern or practice of discrimination, in which event the charge must be filed within six months after the last act of discrimination occurred." 231 Kan. at 765.

Unlike Woods, who was complaining of a continuing violation, there is no evidence in the record that O'Neill was making such a complaint.

O'Neill argues that under *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 52 L. Ed. 2d 571, 97 S. Ct. 1885 (1977), relevant background evidence is admissible. He also cites *Hazelwood School District v. United States*, 433 U.S. 299, 309 n.15, 53 L. Ed. 2d 768, 97 S. Ct. 2736 (1977), for this proposition. Footnote 15 is distinguishable, however, and stands for the admission of relevant background evidence which occurred prior to the passage of Title VII of the Civil Rights Act of 1964. In *Hazelwood*, plaintiffs were entirely precluded from filing complaints until the Act was passed, so evidence of past discrimination, which could not have been addressed, was admissible in future suits. In the instant case, the Kansas Act was on the books and O'Neill could have filed a complaint within the six-month time limit provided by the statute. That he chose not to do so and that he did not allege a continuing violation in his complaint leads us to conclude that the evidence should not have been admitted.

KSU also argues that, even if such evidence were admissible, the trial court's treatment of it was in error. We agree. In its opinion, the court, when referring to O'Neill's nonselection on one prior occasion (assistant registrar), stated:

"9. The rejection of the Respondent on the basis of the complainant's lack of computer related experience is found by this Court *to be nonpersuasive*, considering the totality of the requirements of the position and what was required. Further, this is particularly true when [he] could be updated in computers as needed. Further, [he] had performed in a very satisfactory manner in the temporary position . . . ." (Emphasis added.)

The trial court also found that O'Neill was denied the position of permanent assistant registrar because his age was one of the determinative factors.

The use of the term "nonpersuasive" strongly suggests that the court viewed such evidence as something more than background information, and it appears that the court improperly used such

evidence to make findings concerning incidents which were not a part of the complaint.

The second issue raised is whether the trial court erred in finding that O'Neill had established a prima facie case of sex discrimination.

The first cases to articulate the requirements for establishing a prima facie case were in the field of racial employment discrimination. Other employment discrimination cases have followed the lead of those first cases. The seminal case is *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). In that case, the court stated:

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802.

"The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n.13.

In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981), the court articulated the following requirements to meet the prima facie burden in sex employment discrimination cases. "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." 450 U.S. at 253.

Footnote 6 further explains the flexibility involved in establishing the prima facie case in different factual constructs. It reads:

"In *McDonnell Douglas*, [411 U.S. at 802,] we described an appropriate model for a prima facie case of racial discrimination. The plaintiff must show:

" '(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.' [Citation omitted.]

"We added, however, that this standard is not inflexible, as '[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations.' [411 U.S.] at 802, n. 13.

"In the instant case, it is not seriously contested that respondent has proved a prima facie case. She showed that she was a qualified woman who sought an available position, but the position was left open for several months before she finally was rejected in favor of a male, Walz, who had been under her supervision." 450 U.S. at 253-54 n.6.

*Burdine* addressed the typical sex discrimination case which involves discrimination against women.

In *Jones v. Slater Steels Corp.*, 660 F. Supp. 1570 (N.D. Ind. 1987), the court stated that an inference of unlawful discrimination (noted in *Burdine*) cannot be automatically made when the discrimination is against men rather than women. The court stated: "While it is true that Title VII prohibits discrimination against both sexes it makes little sense, within the historical context of the Act, to infer discrimination against men in the same way that discrimination is inferred against women." 660 F. Supp. at 1575. This adjustment is entirely consistent with the flexibility outlined by the court in *McDonnell Douglas*.

The KCCR argues KSU is presenting a new legal theory in its brief and is prohibited from doing so under *Stephens v. Unified School District*, 218 Kan. 220, 227, 546 P.2d 197 (1975). One issue *Stephens* addressed was the need to fully exhaust administrative remedies under K.S.A. 44-1010 before proceeding to court. This KSU did by filing its motion for rehearing.

The KCCR correctly articulates the standard that, for issues to be presented on appeal, they must have been raised in the motion for rehearing before the KCCR and claims that KSU is prohibited from making its reverse discrimination argument. In *Stephens*, the court said, "Just as he must produce his evidence before the agency in order to claim exhaustion, so must he produce his legal issues." 218 Kan. at 226-27. The holding in *Stephens* is *"that a motion for rehearing under K.S.A. 44-1010 is a prerequisite to judicial review and that on such review the court's inquiry is limited to those issues fairly raised by the motion."* 218 Kan. at 227. (Emphasis added.) Further, the court said, "This court is inclined to give a liberal interpretation to the motion." 218 Kan. at 228.

In the instant case, the legal issue being raised is that the complainant did not meet his burden of establishing a prima facie case. There is no question the KCCR knew the issue before it acted accordingly, and, under *Stephens*, KSU preserved that issue for appeal. Under the flexible guidelines articulated in *Mc-Donnell, Burdine*, and *Jones*, KSU is free to argue that O'Neill has not met his burden to establish a prima facie case.

The trial court, in its conclusions of law, correctly states the three-prong test for burden of proof in discrimination cases. The United States Supreme Court first stated the test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, and reiterated it in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 252-53:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [Citation omitted.] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

Although the trial court lists several reasons which it says, as a matter of law, give rise to a clear inference of discrimination based on both sex and age, our examination of the record discloses a dearth of evidence to support a finding of sex discrimination. At the outset we note that, from a field of 78 applicants almost equally divided by gender, 3 males and 1 female were chosen as finalists, all of whom were considered to be qualified. This fact not only does not support but appears to contradict the court's conclusion (7) (e), which was one of the few directly related to sex: "The position had been held for a substantial time by a woman and due to comments made by interviewing persons and others, the job was inferentially considered by many [of] them to be primarily clerical in nature and thus 'woman's work.'" The record showed that, prior to the incumbent's tenure, the job had also been held by a man. The record is void of any evidence that any interviewer held or expressed a view that this position was "woman's work." There was evidence that, during O'Neill's interviews, it was pointed out to him that the position involved considerable record keeping tasks, which might be interpreted

to be clerical rather than those of an administrator who would delegate such duties to staff. This was done, however, to correct what appeared to be O'Neill's misconception of the position and involved no reference to gender.

The trial court also concluded that one interviewer (Margaret Bloomquist), the retiring director whose duties included those of this newly created position, clearly indicated that she preferred a female to assume those duties and preferred to train a female in the interim. This conclusion was based on findings that Bloomquist appeared hostile to O'Neill at the interview, questioned if he was certified to teach, and, upon learning that he was not, promptly announced that he did "not qualify." The court found that, even when confronted with the fact that teaching experience was not a requirement in the job description, Bloomquist maintained that persons who were not certified and had not taught in the public schools did not qualify. Whether there was an erroneous interpretation of the references to teaching contained in the job notice is not relevant. Even if Bloomquist was completely wrong in her interpretation, and even if she improperly treated teaching experience as "an absolute requirement" as the court found, we fail to see how that demonstrated a sexual bias.

The court also based its conclusion regarding Bloomquist on what appears to be O'Neill's major claim of sexual discrimination. He testified that before his interview he had received the resumes of the other finalists and became suspicious. He became convinced of Bloomquist's hostility during the interview and asked her and Dr. Mary Harris, also an interviewer, "Do you feel that a woman could do a better job in this position than a man?" He stated that, while Harris replied that it made no difference, Bloomquist just smiled. Bloomquist testified that she did not recall the words of her reply but thought she would have told him that it made no difference and was not a consideration. Bloomquist's contemporaneous rating sheet was in evidence, and it contained the notation: "He asked if I thought a man or woman would be best in the position. I told him that wasn't the question." The trial court found that Bloomquist "did not respond, except to smile." The court also found "[t]here is clearly an inference of prejudice by her failure to respond to the forthright inquiry." In its findings the court made no mention of Bloomquist's testimony

concerning the incident and no mention of the documentary evidence contained in her rating chart.

We find nothing else in the record relating specifically to sexual discrimination, albeit many of the court's conclusions refer to the successful applicant as a "younger female," which infers a dual form of discrimination. Some of these references are clearly contrary to the evidence, such as O'Neill "had been refused employment at the University previously in favor of significantly younger female candidates under circumstances giving rise to an inference of discrimination."

The court was referring to evidence admitted as background information regarding the two earlier positions for which O'Neill had applied, but had not been selected. The record is silent as to who was selected for one position, but it discloses that the other position was filled by a male. There is no evidence that O'Neill was rejected in favor of a younger female in either instance.

We are hard pressed to find any, much less substantial competent, evidence to support the finding that O'Neill established a prima facie case of sex discrimination and hold that he did not.

Having so held, we direct our attention to whether O'Neill established a prima facie case of age discrimination, since the trial court's finding that he had made a prima facie case encompassed both sex and age.

In a recent case, *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989), the court held that: "Initially, a plaintiff must establish a prima facie case of discrimination through one of three generally accepted methods: by direct evidence of discriminatory intent; by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp.* [citation omitted]; or through statistical proof." The court further stated: "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." 870 F.2d at 581-82. In analyzing the question as to whether comments concerning a person's age always present direct evidence of discrimination, the *Carter* court concluded that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." 870 F.2d at 582.

Here, O'Neill testified that, during an interview, he and Dean Jordan Utsey, a faculty member, discussed the Pacific Northwest and Utsey's plans for the future. O'Neill said that Utsey commented: " 'You're about as old as I am . . . and I'm retiring.' " O'Neill had spent several years in the Pacific Northwest, and Utsey's comment was made in that context. These comments cannot be construed as direct evidence of discriminatory intent as direct evidence is defined in *Carter*, and O'Neill did not establish a prima facie case by the direct evidence method.

The second way to produce a prima facie case is by meeting the *McDonnell Douglas* test. The Eleventh Circuit has adapted the test to age discrimination cases in the following manner: a prima facie case can be established "with circumstantial evidence by proving: (1) that he is a member of the protected group; (2) that adverse employment action was taken against him, *e.g.*, discharge, demotion, or failure to hire; (3) that he was replaced by a person outside the protected group; and (4) that he was qualified for the position for which he was rejected." *Carter v. City of Miami*, 870 F.2d at 582.

O'Neill's evidence met this test. He was in the protected group at age 59; he was not hired. A person outside the protected group at age 37 was hired. It was agreed that O'Neill, as were all finalists, was qualified for the position. We conclude that O'Neill did make a prima facie case by this method.

Having so concluded, we must then determine if KSU articulated legitimate, nondiscriminatory reasons for selecting Hayden instead of O'Neill. KSU was required to do so as the second prong of the burden shifting under *McDonnell Douglas* and *Burdine* after O'Neill established a prima facie case. It is important to recognize that this burden is not one of persuasion. All that is required is to raise a genuine issue of fact. In *Burdine*, the court said:

> "The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. [Citation omitted.] It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly

set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." 450 U.S. at 254-55.

In addressing the burden, KSU articulated numerous reasons why it selected Hayden over O'Neill. These included that Hayden had recent experience as a transcript analyst for KSU, which was particularly relevant to the duties of the position, and also had recent experience in detailed record keeping and detailed administrative work, which would be required of this position. In addition, Hayden had several years of experience as a public school teacher, which KSU considered relevant to the job duties of advising undergraduate teacher education students. During the interview process, Hayden showed considerable interest in carrying out the duties of the position and asked pertinent questions. By contrast, the bulk of O'Neill's considerable administrative experience was from 1954 to 1968 at the University of Idaho, and he had been in the private sector until late 1982, when he accepted a temporary assistant registrar position at KSU that lasted a few months. O'Neill had no background as a public school teacher and, during the interview process, admitted he misunderstood the "hands-on" nature of the position and asked such questions as who would be working for him.

The trial court found that KSU had not met its burden of articulating legitimate, nondiscriminatory reasons. KSU contends that it clearly articulated such reasons through admissible evidence. KSU also argues that the court made precisely the error that *Burdine* explicitly prohibits by imposing a burden to persuade the court rather than to raise a genuine issue of fact. We are obliged to agree. The reasons articulated clearly raised a genuine issue of fact as to whether Hayden was selected for legitimate or discriminatory reasons. The court in its findings, however, repeatedly stated that it was not persuaded, or that KSU's reasons and evidence were "unpersuasive," and even that they were "not persuasive when weighed against" other evidence. Such language leaves little doubt that the court erroneously applied a standard of persuasion rather than a standard of production and rejected KSU's articulated reasons because the court was not persuaded that KSU was actually motivated by the proffered reasons.

Since KSU did discharge its burden of articulating, through admissible evidence, legitimate and nondiscriminatory reasons for its selection of Hayden, this evidence raised a genuine issue of fact as to whether it discriminated against O'Neill. This then returned the burden back to O'Neill to prove by a preponderance of the evidence that those reasons were a mere pretext. This is the third prong of the burden shifting under *McDonnell Douglas* and *Burdine*. See *Woods v. Midwest Conveyor Co.*, 231 Kan. 763.

The trial court did not require O'Neill to assume the burden of proving by a preponderance of the evidence that KSU's proffered reasons were mere pretext. In finding that KSU had not articulated legitimate nondiscriminatory reasons, the court also found that O'Neill was "substantially better qualified for this position" than was Hayden, and that KSU "has failed to *demonstrate* legitimate nondiscriminatory reasons for its actions . . . and they constitute after-the-fact pretextual reasons to support the employment practices and procedures that took place." (Emphasis added.) This was clearly error. KSU did not have the burden of persuasion, and, once the issue of fact was raised, the burden should have shifted to O'Neill to prove pretext.

We therefore hold that, on the issue of sex discrimination, O'Neill did not establish a prima facie case, and the trial court's decision should be reversed. On the issue of age discrimination, O'Neill did establish a prima face case. However, the trial court's decision must still be reversed because KSU articulated legitimate, nondiscriminatory reasons for its selection. This raised a genuine issue of fact which required O'Neill to show by a preponderance of the evidence that KSU's articulated reasons were pretextual. O'Neill failed to present any evidence relating to KSU's articulated reasons.

Reversed.