(851 P.2d 1017)
No. 67,584

STATE OF KANSAS and the KANSAS DEPARTMENT OF CORRECTIONS, *Appellants*, v. THE KANSAS COMMISSION ON CIVIL RIGHTS and SHARON NERIA, *Appellees*.

Opinion filed December 18, 1992.

*Timothy G. Madden*, legal counsel, Kansas Department of Corrections, of Topeka, for appellants.

*Judy Fowler*, senior legal counsel, Kansas Human Rights Commission, of Wichita, for appellees.

Before BRISCOE, C.J., LARSON, J., and M. KAY ROYSE, District Judge, assigned.

ROYSE, J.: The Kansas Department of Corrections (KDOC) appeals a trial court decision upholding the order of the Kansas Commission on Civil Rights (KCCR), which found KDOC violated the Kansas Act Against Discrimination (K.S.A. 44-1001 *et seq.*) when it failed to employ Sharon Neria in the position of Parole Officer II because of her sex.

Sharon Neria was a Parole Officer I in KDOC's El Dorado office in January 1989 when a Parole Officer II position became available there. She applied for the opening, but a male applicant, James Wilson, was selected.

On March 13, 1989, Neria filed a complaint with the KCCR, alleging that KDOC denied her the Parole Officer II position because of her sex. She specifically alleged a violation of the Kansas Act Against Discrimination.

A formal hearing was conducted by the hearing officer on April 10-11, 1990. He dismissed the complaint, finding that she "failed to prove the allegations of her complaint and has not established that the KAAD was violated."

The commission reviewed the hearing officer's order and approved it in part, rejected it in part, and modified it in part. The KCCR concluded that Neria had sustained her burden to show by a preponderance of evidence that she was subjected to an unlawful employment practice by KDOC. The KCCR awarded her back pay, front pay, and damages for pain, suffering, and humiliation.

KDOC sought judicial review of the agency action in the District Court of Shawnee County, Kansas. Upon de novo review, the district court held that Neria sustained her burden of proving a prima facie case of discrimination, that the nondiscriminatory reasons advanced by KDOC for not hiring Neria were pretextual, and that Neria was entitled to back pay, front pay, and damages.

KDOC perfected an appeal to this court.

Where a district court has conducted a de novo review of a KCCR order, the scope of review is limited.

"It is clear that this court's scope of review is to determine if, when viewing the evidence in the light most favorable to complainant, there is

substantial competent evidence to support the trial court's findings of fact and whether these findings are sufficient to support the trial court's conclusions of law. ' "[S]ubstantial evidence" is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988)." *Kansas State Univ. v. Kansas Comm'n on Civil Rights*, 14 Kan. App. 2d 428, 432, 796 P.2d 1046, *rev. denied* 246 Kan. 767 (1990).

The findings adopted by a trial court will not be set aside unless they are clearly erroneous. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, 736, 697 P.2d 52 (1985).

The first issue raised by KDOC is whether the KCCR violated its regulations in rejecting the findings of the hearing examiner. KDOC relies on K.A.R. 21-45-17(d)(16), which provides that a presiding officer shall have authority to "[d]etermine credibility and the weight of evidence in making findings of fact and conclusions of law or opinion and their reasons." KDOC seems to imply that, because a presiding officer is authorized to evaluate testimony, his findings are unalterable.

This argument is without merit. K.S.A. 44-1005(1) and (n) both explicitly authorize the KCCR to approve, reject, or modify the findings and orders of a hearing examiner. K.A.R. 21-45-22(f) accordingly outlines the procedural steps to be followed once the KCCR "upholds, abrogates, changes, or modifies an original order."

In this case, the hearing officer found that Neria failed to prove her allegations and dismissed the complaint. Upon review, the KCCR approved in part, rejected in part, and modified in part the hearing officer's order. The Kansas Act Against Discrimination and the KCCR's regulations clearly authorize such action by the commission.

The second issue raised is whether the KCCR violated the prohibition on ex parte communications contained in K.S.A. 77-525(a). That statute provides:

"A presiding officer serving in an adjudicative proceeding may not communicate, directly or indirectly, regarding any issue in the proceeding while the proceeding is pending, with any party or participant, with any person who has a direct or indirect interest in the outcome of the proceeding or with any person who presided at a previous stage of the proceeding, without notice and opportunity for all parties to participate in the communication."

The statute does, however, authorize a presiding officer to receive aid from staff assistants, so long as the assistants do not "(1) [r]eceive *ex parte* communications of a type that the presiding officer would be prohibited from receiving; or (2) furnish, augment, diminish or modify the evidence in the record." K.S.A. 77-525(b).

To support its claim that the KCCR engaged in prohibited ex parte communications, KDOC relies on the deposition of Art Solis, a staff attorney with the KCCR. That deposition, however, has not been included in the record on appeal. That omission precludes consideration of this issue. "Appellant must designate an adequate record on appeal to substantiate contentions made to the appellate court. Without such a record, claims of alleged error must fail." *Rural Water Dist. No. 6 v. Ziegler Corp.*, 9 Kan. App. 2d 305, Syl. ¶ 4, 677 P.2d 573, *rev. denied* 235 Kan. 1042 (1984).

The next issue raised is whether the KCCR properly served KDOC so as to obtain personal jurisdiction over the agency. KDOC contends that the KCCR did not serve a copy of the complaint on the attorney general or an assistant attorney general and, thus, failed to comply with K.S.A. 60-304(d)(5).

K.S.A. 44-1005 establishes procedural requirements for the KCCR. In particular, 44-1005(d) states:

"After the filing of any complaint by an aggrieved individual, by the commission, or by the attorney general, the commission shall, within seven days after the filing of the complaint, serve a copy on each of the parties alleged to have violated this act, and shall designate one of the commissioners to make, with the assistance of the commission's staff, prompt investigation of the alleged act of discrimination."

The KCCR has adopted a regulation which sets forth the methods for service:

"*(a) Service by the Commission.* Orders, notices and other documents originating with the commission shall be served by the office of the commission by mail, except when service by another method shall be specifically designated by the commission, by mailing a copy thereof to the person to be served, addressed to the person or persons designated in the initial pleading or submittal at the person's principal office or place of business. When service is not accomplished by mail, it may be effected in person or as otherwise ordered by any one duly authorized authorized by the commission." K.A.R. 21-40-11.

KDOC argues, nonetheless, that service must be accomplished in accord with K.S.A. 60-304(d)(5), relying on *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311 (1985).

*Hopkins* was a civil action filed in Saline County District Court. *Hopkins* notes that service of process must be accomplished pursuant to K.S.A. 60-301 *et seq.* to trigger jurisdiction of the district court. *Hopkins* does not purport to limit the methods of service which may be adopted by an administrative agency.

The KCCR has chosen not to adopt the provisions of K.S.A. 60-301 *et seq.* Instead, it has adopted regulations which spell out its procedures. Such regulations are expressly authorized by K.S.A. 44-1004(3) and 44-1005(p). The KCCR complied with its regulations. in this case and, therefore, KDOC was properly subjected to the KCCR's jurisdiction.

The fourth issue raised by KDOC is whether the district court erred in finding that KDOC engaged in an unlawful employment practice. As noted at the outset, this court cannot set aside findings of the trial court unless those findings are clearly erroneous. This court cannot, as KDOC urges, conduct an independent evaluation of the evidence.

A review of the thorough, detailed order issued by the district court makes clear that substantial evidence supports the trial court's findings and those findings are sufficient to support the court's conclusions of law. Sharon Neria demonstrated that she was a qualified woman who sought an available position and who was rejected in favor of a male. KDOC does not even contest that she presented a prima facie case. See *Kansas State Univ. v. Kansas Comm'n on Civil Rights*, 14 Kan. App. 2d at 435.

The record provides ample support for the trial judge's determination that the legitimate and nondiscriminatory reasons for hiring someone else, articulated by KDOC, were pretextual. The record discloses that Supervisor Farmer attempted to discourage Neria from applying for the new position by telling her incorrectly that completion of certification training was a requirement. Supervisor Farmer impeded Neria's ability to get that training. He has difficulty working with women and makes comments in the workplace of a derogatory nature against females. Such comments have also been made by Parole Officer II Bottom, another in-

dividual who was a member of the three-man hiring panel. Supervisor Farmer initiated a conversation with James Wilson (the individual hired) regarding the new position before the interviews were conducted. Wilson had no prior experience as a Parole Officer I, experience which had been obtained by most, if not all, of the other Parole Officer IIs. In short, there was ample evidence to support the trial court's decision that two of the three individuals involved in the hiring decision had determined to hire a man as Parole Officer II even before the candidates were interviewed. KDOC does not even assert that the findings adopted by the trial judge were clearly erroneous.

The final issue raised by KDOC is whether the KCCR had authority to award Neria front pay and a promotion. KDOC asserts this award "usurps the statutory framework embodied in the Civil Service Act and the sovereign immunity possessed by the State in its legislative appropriations."

KDOC's assertion ignores the fact that the legislature has placed the State and its agencies within the scope of the Kansas Act Against Discrimination (see K.S.A. 44-1009[c][3]); that the KCCR is expressly authorized to order that an employer hire, reinstate or upgrade an employee (K.S.A. 44-1005[k]); and that the KCCR may also require such affirmative action by an employer as "will effectuate the purposes of this act." K.S.A. 44-1005(k).

The decision of the district court is affirmed.