(864 P.2d 220)
68,061

EXCEL CORPORATION, *Appellant/Cross-Appellee,* v. THE KANSAS HUMAN RIGHTS COMMISSION and JOHN W. SNYDER, *Appellees/ Cross-Appellants.*

Petition for review denied 253 Kan. 857 (1993).

Opinion filed May 21, 1993.

*Robert D. Overman* and *Anthony J. Powell,* of Martin, Churchill, Overman, Hill & Cole, Chartered, of Wichita, for appellant/cross-appellee.

*Judy Fowler,* senior legal counsel, Kansas Human Rights Commission, of Wichita, for appellees/cross-appellants.

Before GERNON, P.J., PIERRON, J., and PAUL E. MILLER, District Judge, assigned.

MILLER, J.: Excel Corporation (Excel) appeals from the district court's decision upholding the order of the Kansas Human Rights Commission (KHRC), formerly the Kansas Commission on Civil Rights, which found that Excel violated the Kansas Act Against Discrimination (K.S.A. 44-1001 *et seq.*) and the Kansas Age Discrimination in Employment Act (K.S.A. 44-1111 *et seq.*) by terminating John W. Snyder from his position as a truck dispatcher because of his age. Snyder and KHRC cross-appeal from the court's finding that Snyder could not recover damages for the

pain, humiliation, and suffering he sustained as a result of losing his job.

The issues before the court are these:

(1) ARE THE DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE?

(2) DID THE DISTRICT COURT ERR AS A MATTER OF LAW BY CONCLUDING THAT THE KHRC DID NOT DENY EXCEL DUE PROCESS OF LAW?

(3) DID THE DISTRICT COURT ABUSE ITS DISCRETION BY CONCLUDING THAT THE PAIN, HUMILIATION, AND SUFFERING SNYDER EXPERIENCED AS A RESULT OF HIS TERMINATION DID NOT JUSTIFY A DAMAGE AWARD UNDER THE PROVISIONS OF K.S.A. 1992 SUPP. 44-1005(k)?

Because the sufficiency of the evidence to support the trial court's findings and conclusions is in issue, the facts will be stated in some detail.

Excel, a subsidiary of Cargill, Inc., (Cargill) is in the business of processing beef and pork products. Snyder began working as a dispatcher in the transportation department of Excel's Wichita plant on March 1, 1987, after Excel purchased Del Pero Mondon, Inc., (DPM) a meat processing operation and Snyder's previous employer. During his employment with DPM, Snyder worked as the safety manager for the corporation's trucking operation. Snyder earned a salary of $32,500 a year while working for DPM. Snyder's salary remained at the same level when he began working for Excel. Excel's contractual agreement with DPM required Excel to pay former DPM employees an amount equal to their previous salaries.

When Snyder began working for Excel, the transportation department consisted of three separate truck divisions: the tram fleet, the private fleet, and the owner/operator fleet. A total of four dispatchers worked in the transportation department. Each division required a truck dispatcher, with two dispatchers required to manage the owner/operator fleet of trucks. Snyder worked as a codispatcher for the owner/operator fleet until becoming the dispatcher for the private fleet in September of 1987.

In the spring of 1988, Excel executives decided to eliminate a dispatcher position due to a drastic reduction in the number of trucks in the company's fleet. After evaluating each of the four dispatchers, a decision was made to terminate Snyder's employment. On July 18, 1988, Snyder learned that his employment with Excel would end as of the following day. Paul Miles, Snyder's supervisor, indicated that the dispatcher for the tram fleet would be taking over Snyder's position. At the time of his termination, Snyder was 60 years old. The three dispatchers retained by Excel ranged in age from 32 to 46. None of the three earned a salary greater than $26,500.

On September 19, 1988, Snyder filed a complaint with the KHRC regarding his termination. Snyder returned to work at Excel on January 27, 1989, when a dispatcher position with the private carriage fleet became available. Upon returning to work, Snyder assumed salary and benefit levels equal to those he enjoyed prior to his layoff. Snyder worked as a dispatcher for Excel until his retirement in March of 1990.

A hearing on Snyder's complaint took place on May 16, 1991. Snyder testified at the hearing about his experience in the trucking industry, as well as his performance as an Excel employee. Snyder, who held some position in the trucking industry for his entire adult life, began working as a truck driver in 1954. He subsequently held a number of different management positions which allowed him to become familiar with the shipping and loading of trucks, truck maintenance, and government safety regulations. Throughout his career Snyder attended educational seminars and workshops dealing with various aspects of the trucking business.

When asked to evaluate his performance as a dispatcher, Snyder maintained that he did quality work. He indicated that he had a good relationship with the truck drivers who worked for Excel. Snyder further stated that, although he may have made several mistakes when dispatching trucks, he did his job as well as possible and tried to learn from his errors. Snyder also testified concerning his perceptions of the abilities of his fellow dispatchers. He indicated that, although Rod Detra did quality work, the other two dispatchers, Mary Hathaway and James Spader, were inexperienced and performed inadequately.

Snyder testified that Paul Miles told him on three occasions that a $32,500 salary was $10,000 too much for the dispatcher position. Snyder could only recall the details of one of those conversations, however, and admitted that Miles made his comments on that occasion in jest.

When questioned about his emotional state after the termination of his job, Snyder recalled feeling depressed and despondent as he unsuccessfully attempted to find new employment. He indicated he had a difficult time facing his friends and family, and his relationship with his wife deteriorated as a consequence of the financial problems which resulted from his lack of work.

Kenneth Fleming, a manager in the human resources department at Excel, testified as a witness for both Snyder and Excel about the company's decision to terminate Snyder's employment. Fleming indicated that he evaluated each of the four dispatchers using a system he created pursuant to guidelines developed by Cargill. The Cargill guidelines urged managers faced with layoffs to evaluate employees on the basis of proven skills and abilities. With this in mind, Fleming rated each of the four dispatchers in four different categories: seniority, performance, stretch (otherwise referred to as potential), and education. He assigned a numerical value to each dispatcher in all four categories, based upon a point system.

Fleming then adjusted the point totals in each category, assigning the greatest amount of weight to seniority and weighing the remaining categories equally. Application of Fleming's system resulted in Detra receiving the highest rating, Snyder the lowest, and Spader and Hathaway in between.

Fleming assigned the dispatchers points for education by reviewing the educational history supplied by each employee in their applications for employment with Excel. Fleming assigned points for seniority, performance, and potential to each dispatcher by reviewing a management location report prepared in June of 1988. Fleming testified that dispatch supervisor Paul Miles determined the performance and potential ratings found for each dispatcher in the report. Fleming had no idea why Miles chose to assign a particular rating to a given dispatcher.

In arriving at the final ranking, Fleming did not meet in person with any of the dispatchers, nor did he meet with Miles. Fleming

indicated that he avoided personal contact with the parties involved in the layoff because he did not want to initiate any rumors. Fleming testified that he had used the aforementioned ranking system on three different occasions, including the instance which resulted in Snyder's termination. He stated that the purpose of the rating system was to retain the most qualified employees for those positions remaining when a reduction in force was required.

Fleming admitted that, when he assigned points for education to each dispatcher, he did not consider Snyder's attendance at trucking workshops and continuing education seminars. Fleming testified that, as long as an individual received an education which gave them "a broader exposure to things in life," the type of education one possessed was not an important consideration. As a result, Fleming assigned Hathaway the highest score for education of any dispatcher, based on the fact that Hathaway had a masters degree in music education.

Fleming admitted that his evaluation of the four dispatchers did not include the information found in the latest annual performance evaluations prepared by Miles and reviewed and signed by each employee in April of 1988, which are included in the record on appeal. In those evaluations, Miles assigned Snyder an "overall current performance" rating of "good." Detra, Spader, and Hathaway received respective ratings of "very good," "good" and "needs improvement."

Although Snyder and Spader received the same overall performance rating in their most recent annual evaluations, the management location report submitted by Miles to Fleming gave Spader a performance rating of 4 and Snyder a rating of 3. Fleming indicated that Miles would have general knowledge of the purpose of the performance ratings. Fleming admitted that Miles could manipulate performance ratings without being subject to audit.

Although Snyder began working as a dispatcher before either Spader or Hathaway, Spader and Hathaway each received more seniority points than Snyder because they both began working for Excel in 1982. Spader previously worked for Excel as a mail clerk and security officer, while Hathaway worked as a secretary before becoming a dispatcher. When questioned about seniority,

Fleming indicated that a person received seniority points based upon the entire length of time worked for Excel as opposed to the length of time worked in a specific department with the company.

During the course of the hearing, the hearing examiner admitted Complainant's Exhibit 15, a "Position Content Summary Evaluation Request Form for Exempt Positions." This document, prepared by Paul Miles on July 1, 1988, gave a detailed description of the dispatcher position. On the third page of the document, Miles set forth his estimate of the minimum knowledge and skill requirements for the dispatcher position. Miles indicated that a dispatcher should have at least "five years experience in the trucking business with at least one year at supervisory level." The documents in the employee files of Spader and Hathaway indicate that neither possessed this level of experience in July of 1988.

After the conclusion of the hearing, the hearing examiner found in favor of Snyder and awarded the complainant $10,983.80 in lost wages and $1,900 for the pain, suffering, and humiliation which Snyder experienced as a result of the discriminatory acts of Excel. Excel filed a petition requesting review of the hearing examiner's initial order. The KHRC issued a final order approving the hearing officer's findings and the entire award to Snyder. Excel subsequently filed a petition for reconsideration, which was denied by operation of law pursuant to K.S.A. 1992 Supp. 77-529(b). Excel then petitioned for district court review. The district court issued an order adopting the findings and conclusions of the hearing officer as to the lost wages award, but reversed the decision to award Snyder damages for pain, humiliation, and suffering. Excel timely appeals, and Snyder timely cross-appeals from the order of the district court.

ARE THE DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE?

Excel argues on appeal that the findings of fact adopted by the district court are not supported by the evidence in the record and that the conclusions of law adopted by the court are erroneous. The appropriate standard of review was set forth most

recently in *Kansas State Univ. v. Kansas Comm'n on Civil Rights*, 14 Kan. App. 2d 428, Syl. ¶ 2, 796 P.2d 1046, *rev. denied* 246 Kan. 767 (1990):

"Where the trial court has made findings of fact and conclusions of law in a trial de novo arising from a [Kansas Human Rights Commission] proceeding, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law."

Kansas statutory law prohibits employers from discharging employees on the basis of age. K.S.A. 1992 Supp. 44-1113(a)(1). The complainant in employment discrimination cases bears the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the complainant succeeds in proving a prima facie case, the burden shifts to the respondent to articulate some legitimate nondiscriminatory reason for the complainant's termination. Should the respondent carry this burden, then the complainant must prove by a preponderance of the evidence that the legitimate reasons offered by the respondent were a pretext for discrimination. See *Kansas State Univ.*, 14 Kan. App. 2d 428, Syl. ¶ 4.

In the instant case, the district court concluded that Snyder succeeded in proving a prima facie case of age-based employment discrimination because: (1) he was over the age of 18 (see K.S.A. 1992 Supp. 44-1112[a]); (2) he had the qualifications to work as a dispatcher and performed at a level which met Excel's legitimate expectations; (3) Excel terminated his employment; and (4) a younger person took over his dispatcher position. The court also concluded that Excel met its burden of articulating legitimate nondiscriminatory business reasons for terminating Snyder's employment. Finally, the court concluded that Snyder met his burden of proving by a preponderance of the evidence that Excel's stated reasons for Snyder's termination constituted a mere pretext for age discrimination. On appeal, Excel challenges this final finding as contrary to the evidence in the record.

In arguing that its reasons for terminating Snyder were not a pretext for discrimination, Excel urges this court to follow the reasoning of the court in *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216 (7th Cir. 1991). In that case, an engineer terminated by Westinghouse during a reduction in force filed a suit

alleging that the corporation terminated him because of his age. After the plaintiff established a prima facie case of age discrimination at trial, the Westinghouse manager responsible for making termination decisions testified that he sought to retain those engineers who he believed possessed the most versatility and creativity. The plaintiff, whose engineering experience was very narrow in focus, lost his job on this basis.

In an attempt to rebut Westinghouse's explanation for its decision to terminate his employment, the plaintiff testified that he possessed the versatility and creativity sought by his former employer. He also introduced evidence of his receipt of a merit pay increase shortly before his termination, as well as favorable performance reviews and a letter of recommendation from his supervisor. On appeal, the court held the plaintiff had failed to prove that Westinghouse's stated reason for his termination constituted a pretext for discrimination. The court concluded that, standing alone, the plaintiff's self-serving testimony regarding his ability was insufficient to contradict his employer's assessment of that ability. The court also found the plaintiff's documentary evidence to be nonresponsive to Westinghouse's stated reason for his termination—the need for versatility in the context of a reduction in force.

Even in light of the *Aungst* opinion, substantial competent evidence exists here to support the district court's conclusion that Excel's stated reasons for terminating Snyder were pretextual. Unlike the plaintiff in *Aungst*, Snyder presented other evidence in addition to his own testimony to undermine Excel's stated reasons for the complainant's termination. Excel's stated goal in deciding which employee to terminate was to retain those individuals found to be the most qualified for the dispatcher position. In his capacity as manager of the dispatchers, Paul Miles determined that, at a minimum, a dispatcher should possess five years of experience in the trucking business, including one year in a supervisory capacity.

The evidence presented by Snyder indicates that neither Spader nor Hathaway possessed the amount of experience which Miles expected of a dispatcher. Spader began working as a dispatcher in May of 1987. Prior to becoming a dispatcher, his only apparent experience in the trucking industry consisted of a sum-

mer job driving a delivery vehicle. Hathaway became a dispatcher in January of 1988. Although she had more than five years experience working as an accountant and secretary in the trucking industry, there is no indication that she had any supervisory experience prior to becoming a dispatcher.

A comparison of Snyder's credentials with those of Spader and Hathaway suggests that, pursuant to the provisions of the job description for dispatchers, Snyder was the most qualified of the three to serve as a dispatcher. Yet when rating each of the dispatchers, Fleming used a point system which failed to account for Snyder's extensive work experience in the trucking industry. In addition, Fleming failed to compare Snyder's April 1988 performance evaluation with those of Spader and Hathaway. Had Fleming done so, he would have found that Snyder's overall performance rating equaled Spader's and exceeded Hathaway's.

A review of the record in this case indicates that, unlike the situation in *Aungst*, a sufficient factual basis exists to support the district court's conclusion that Excel terminated Snyder's employment on the basis of his age. The system used to evaluate Snyder and his co-workers did not meet Excel's stated goal of retaining the most qualified individuals for the three remaining dispatcher positions. The district court's finding that Excel engaged in unlawful age discrimination is affirmed.

## DID THE DISTRICT COURT ERR AS A MATTER OF LAW BY CONCLUDING THAT THE KHRC DID NOT DENY EXCEL DUE PROCESS OF LAW?

In its petition for review of the hearing examiner's initial order, Excel included 20 pages of arguments and authorities. In its final order upholding the initial order of the hearing examiner, the KHRC made the following finding:

"2. The parties were duly and properly served with a copy of the Hearing Examiner's proposed findings of fact, conclusions of law and initial order on October 25th, 1991, and said service is hereby approved. The parties have thereby been afforded an opportunity since service of the proposed findings of fact, conclusions of law and initial order in which to submit further briefs to the Commission pursuant to K.S.A. 77-527(e), but none have been submitted."

Excel interpreted the aforementioned finding as a sign that the KHRC failed to consider the points raised by the corporation in

its petition for review of the initial order. In its petition for district court review, Excel asserted that the KHRC denied the corporation due process of law by failing to consider the substantive arguments raised in opposition to the initial order of the hearing officer. The court dismissed the due process arguments raised by Excel as being without merit. Excel contends on appeal that the district court's conclusion is erroneous as a matter of law. This court's review of the district court's conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The basic elements of due process include the right to be heard at a meaningful time and in a meaningful manner. *Peck v. University Residence Committee of Kansas State Univ.*, 248 Kan. 450, 467, 807 P.2d 652 (1991). Excel alleges that the KHRC violated its due process rights by failing to comply with K.S.A. 77-527(e). That statutory subsection requires that, before reviewing an initial order, an agency must afford each party to the dispute an opportunity to present briefs on the matter.

The documents in the record do not indicate that the KHRC violated Excel's due process rights. Excel did not submit a separate brief with its petition for review of the hearing examiner's initial order. Excel's petition for review does contain a detailed explanation of the allegedly erroneous findings of fact and conclusions of law in the hearing examiner's order; however, this material appears to be nothing more than a statement of the basis for the petition, which is required by K.S.A. 77-527(c). The KHRC's final order indicates that it reviewed the hearing examiner's proposed findings and conclusions and found them to be fully supported by the evidence in the record. Therefore, Excel's allegation of error is not persuasive.

DID THE DISTRICT COURT ABUSE ITS DISCRETION BY CONCLUDING THAT THE PAIN, HUMILIATION, AND SUFFERING SNYDER EXPERIENCED AS A RESULT OF HIS TERMINATION DID NOT JUSTIFY A DAMAGE AWARD UNDER THE PROVISIONS OF K.S.A. 1992 SUPP. 44-1005(k)?

Snyder contends that the district court erred in reversing that part of the hearing officer's order which awarded the complainant $1,900 in damages for pain, humiliation, and suffering. The dis-

trict court reversed the damage award on the grounds that "the pain, humiliation, and suffering undergone by the employee, John W. Snyder, was not of a nature or extent to justify the award of any money." The district court did not make factual findings, however, to support its conclusion.

Pursuant to K.S.A. 1992 Supp. 44-1005(k), a hearing officer's order which finds an employer has engaged in an unlawful employment practice "may also include an award of damages for pain, suffering and humiliation which are incidental to the act of discrimination, except that an award for such pain, suffering and humiliation shall in no event exceed the sum of $2,000." The language of the statute gives the hearing officer wide discretion in deciding whether to award damages for pain, suffering, and humiliation. Such discretion is also presumably extended to the district court, which has de novo review of the hearing officer's order and may set it aside or modify it in whole or in part. K.S.A. 44-1011(b)(3).

On appellate review, the test of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, the appellate court will not disturb the trial court's decision. *In re D.D.P., Jr.*, 249 Kan. 529, 546, 819 P.2d 1212 (1991). Because the district court made no factual findings to support its conclusion, and because the record on appeal includes Snyder's uncontroverted testimony that he experienced depression and despondency after losing his job at Excel, that he had a difficult time facing his friends and family, and that his relationship with his wife became strained due to financial difficulties, we remand the case to the district court for reconsideration of this issue and to allow it to set forth with particularity the findings upon which it based its conclusion.

Affirmed in part and remanded.