**BROWN MACKIE COLLEGE, Plaintiff,**

v.

**Gene P. GRAHAM, Jr.,
et al., Defendants.**

**Civ. A. No. 88–2220–V.**

United States District Court,
D. Kansas.

June 24, 1991.

Barry W. McCormick, Payne & Jones Chartered, Overland Park, Kan., for plaintiff.

John J. Jurcyk, Jr., Daniel F. Church, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., Gene P. Graham, Sr., Independence, Mo., for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case comes before the court on the motion (Doc. 175) of defendants Gene P. Graham, Jr. (Graham), and Graham & Graham, P.C. (law firm), for summary judgment pursuant to Fed.R.Civ.P. 56(b). Plaintiff Brown Mackie College has responded (Doc. 182), opposes defendants' motion, and moves the court for partial summary judgment pursuant to Fed. R.Civ.P. 56(a). Defendants' motion is granted, and plaintiff's motion is denied.

Plaintiff brought this action, claiming that defendants have tortiously interfered with contracts between plaintiff and fifteen former students who had enrolled in court reporting courses offered by plaintiff. Plaintiff seeks compensatory and punitive damages for defendants' alleged tortious conduct.

██ A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's proper inquiry is "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

██ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). This burden may be discharged by "showing," that is, pointing out to the district court, that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Fed.R.Civ.P. 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (em-

phasis in original). Once the moving party has properly supported its motion for summary judgment the burden shifts to the nonmoving party: "a party opposing ... may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. *Id.* at 254, 106 S.Ct. at 2513.

The relevant uncontroverted facts, as established by the parties pursuant to D.Kan. Rule 206(c), appear as follows:

Defendant Graham is a licensed attorney, employed by defendant law firm, and engaged in the practice of law in Independence, Missouri. Plaintiff is a proprietary school, licensed by the Kansas Department of Education, with campuses located at Salina and Overland Park, Kansas. Plaintiff offers its students a number of courses of study, including court reporting.

On July 23, 1986, plaintiff filed an action in Missouri state court against Pamela Fennelly, one of its former court reporting students, to collect unpaid fees. Plaintiff claimed that Fennelly had breached her "Enrollment Agreement." Fennelly, represented by defendant Graham, brought counterclaims against plaintiff, claiming damages for fraud and misrepresentation. In preparing for trial of the case, defendant Graham contacted several of plaintiff's then-current and former court reporting students, some of whom he intended to call as witnesses. Defendant Graham learned, during his investigations, that a number of plaintiff's students and former students were dissatisfied with plaintiff's court reporting program.

Sometime prior to January 1, 1988, several of plaintiff's then-current and former court reporting students, who were aware of the Fennelly case, approached defendant Graham and indicated to him that they might be interested in suing plaintiff. They also informed him that others might have the same interest. Defendant Graham advised these students to wait and contact him when the Fennelly case had been concluded. Defendant Graham made a list of the names of the students who were interested in suing plaintiff.

On January 29, 1988, plaintiff filed a collection action against Carrie Dennis, another former court reporting student. Plaintiff claimed that Dennis had breached her "Enrollment Agreement." Defendant Graham entered his appearance on behalf of Dennis and filed a counterclaim against plaintiff, claiming that plaintiff had fraudulently induced Dennis to enroll in its court reporting program.

In early February, 1988, the parties to the Fennelly case reached a settlement agreement and the case was dismissed. Defendant Graham then instructed his secretary to telephone the students whose names appeared on the list that he had made. The calls were placed during the week of February 8, 1988. Defendant Graham's secretary informed the students that he would be holding a meeting on February 20, 1988, to discuss the students' legal rights with regard to possible legal action against plaintiff. Some of the students whom defendant Graham's secretary contacted had never spoken to defendant Graham and were not interested in suing plaintiff.

On February 20, 1988, the first in a series of meetings between defendant Graham and the students was held at Graham's office. A second meeting was conducted on April 16, 1988. Shelly Gasper, an attorney from the Kansas Attorney General's Office, attended that meeting. At the time, the Kansas Attorney General was investigating plaintiff's court reporting program with respect to alleged violations of the Kansas Consumer Protection Act.[1]

1. On April 13, 1989, the Kansas Attorney General's investigation of Brown Mackie College culminated in the execution of an Assurance of Voluntary Compliance. Brown Mackie College

Defendant Graham conducted a third and final meeting on May 14, 1988. Gasper also attended that meeting. Between January and April, 1988, approximately thirty-five students withdrew from plaintiff's court reporting program. On March 23, 1988, plaintiff filed this action.

■ On September 27, 1990, the pretrial order was entered in this case (Doc. 202). The pretrial order controls the course of the case and measures its dimensions. Fed.R.Civ.P. 16(e); D.Kan.Rule 213(c); *American Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 806 (10th Cir.1977). Only those claims and theories memorialized in the pretrial order shall be considered at trial. Claims or theories asserted beyond the scope of the pretrial order are extraneous and will not be considered by the court. *See, Hernandez v. Alexander*, 671 F.2d 402, 407 (10th Cir.1982).

In the pretrial order, plaintiff generally contends that defendant Graham tortiously interfered with its contractual relations by calling a number of students during the weeks of February 8 and 15, 1988, to inform them of the February 20, 1988, meeting, and also by conducting a series of meetings. Specifically, plaintiff claims damages with regard to the fifteen students named in the pretrial order whom it asserts quit school and ceased paying tuition because of defendant Graham's actions. Plaintiff's claims against defendant law firm are based solely on the doctrine of *respondeat superior.*

■ The threshold issue in this case is whether Kansas or Missouri law governs this case. In determining the applicable law, a federal court hearing a non-federal claim must apply the law of the state in which it sits, including that state's choice of law rules. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941); *Robert A. Wachsler, Inc. v. Florafax Int'l, Inc.*, 778 F.2d 547, 549 (10th Cir.1985). In tort actions, Kansas courts apply the law of the forum where the last act necessary to create the cause of action occurred. *Ling v. Jan's*

*Liquors*, 237 Kan. 629, 633, 703 P.2d 731 (1985). In this case, plaintiff alleges that it incurred damages in Kansas. Accordingly, Kansas law governs this case.

■ In Kansas, a party, who without legal privilege to do so, induces or otherwise intentionally causes a third person not to perform a contract with another may be held liable for tortious interference with that contract. *Baruch v. Beech Aircraft Corp.*, 175 F.2d 1, 3 (10th Cir.), *cert. denied,* 338 U.S. 900, 70 S.Ct. 251, 94 L.Ed. 554 (1949); *International Union, UAW v. Cardwell Mfg. Co.*, 416 F.Supp. 1267, 1290 (D.Kan.1976). Similarly, a party may be held liable for tortious interference with a prospective contract, business relationship or advantage. *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106 (1986).

■ Defendants, in their motion for summary judgment, urge the court to review the sufficiency of plaintiff's interference claims as tortious interference with *prospective* contracts. Plaintiff, on the other hand, asserts that it is claiming tortious interference with *existing* contracts. The elements of tortious interference with a prospective contract and tortious interference with an existing contract are identical, except that the former requires, as an additional element, proof of causation. *Turner,* 240 Kan. at 12, 722 P.2d 1106. We conclude that defendants' interference, if any, affected existing contracts between plaintiff and its students. We shall therefore review the sufficiency of plaintiff's claims applying the elements of tortious interference with an existing contract. *See* Restatement (Second) Torts § 766 (1977); *Cardwell Mfg. Co.*, 416 F.Supp. at 1290.

■ To establish a cause of action for tortious interference with an existing contract, plaintiff must demonstrate: (1) the existence of contracts between plaintiff and the former students; (2) knowledge of the contracts on defendants' part; (3) an intentional interference with the known contract rights without legal justification;

---

agreed not to engage in fraud and/or other conduct violative of the Kansas Consumer Protection Act with respect to its court reporting program (Doc. 177, Ex. B).

and (4) resulting damage to plaintiff. *Cardwell Mfg. Co.*, 416 F.Supp. at 1290.

In their motion, defendants contend that they are entitled to summary judgment in this case on four grounds. First, defendants assert that defendant Graham did not induce any of the fifteen students specifically named by plaintiff in the pretrial order to quit plaintiff's court reporting program, and thus defendant Graham's actions were not the cause of plaintiff's alleged damages. Second, defendants contend that if defendant Graham did induce any of the students to quit, as an attorney, his actions were privileged. Third, defendants contend that defendant Graham's actions in this case were absolutely privileged. Fourth, defendants contend that subjecting them to liability in this case would violate their constitutional rights and those of their clients. We will discuss only plaintiff's first two contentions—in reverse order—because they are dispositive of the case.

■■■ Not all interference with contractual relations are tortious. *Turner*, 240 Kan. at 12, 722 P.2d 1106. While an action will lie for unjustifiable inducement to breach a contract with a third person, the inducement must be wrongful and not privileged. *May v. Santa Fe Trail Transp. Co.*, 189 Kan. 419, 424–25, 370 P.2d 390 (1962). The question of privilege is one of law to be determined by the court. Thus, to analyze a claim for tortious interference with a contract, we must determine whether the complained of action was privileged. To do this, we must examine: (1) the nature of the alleged tortfeasor and (2) the nature of the alleged culpable conduct. Restatement (Second) of Torts, §§ 767, 770 (1977).

■■■ In analyzing plaintiff's claim for tortious interference with contractual relations our first inquiry concerns the nature of the alleged tortfeasor, defendant Graham. In Kansas it is well-settled that a person acting for and on behalf of another may be privileged to advise and/or induce that person to breach a contract with a third person. *May*, 189 Kan. at 424–25, 370 P.2d 390. In *May*, the Kansas Su-

preme Court concluded that an officer and agent of a corporation was privileged, as a fiduciary and advisor, to induce a breach of contract with a third person just as a servant is privileged to induce his master to breach a contract with a third person. *Id. May* is consistent with Restatement § 770. It provides:

> One who with responsibility for the welfare of a third person, intentionally causes that person not to perform a contract or enter into a prospective contractual relation with another, does not interfere properly with the other's relation if the actor (a) does not employ wrongful means and (b) acts to protect the welfare of the third person.

*Id.* Comment (b) to section 770 states that the "responsibility may exist in such relationships as those of ... attorney and client." *Id.*

■■■ In this case it is uncontroverted that defendant Graham was, at all relevant times, an attorney acting within the scope of his profession. It is not disputed that a number of plaintiff's court reporting students requested legal assistance of defendant Graham. Defendant Graham provided counsel to those who requested it. Many of the students became defendant Graham's clients. An attorney, as a fiduciary and advisor, is privileged to advise and/or induce a client to breach a contract with a third person just as a servant is privileged to induce his master to breach a contract. *See May*, 189 Kan. at 419, 370 P.2d 390; Restatement § 770. Therefore, if defendant Graham advised and/or induced any of his clients to breach their contract with plaintiff, he was privileged to do so.

Our second inquiry regarding plaintiff's claim concerns the nature of defendant Graham's alleged culpable conduct. Under Restatement § 770 defendant Graham would not be privileged to advise and/or induce his clients to breach contracts with plaintiff if he employed "wrongful means." We conclude that "wrongful means" is identical to that which the Kansas Supreme Court has referred to as "improper conduct." *See, Turner*, 240 Kan. at 13, 722

P.2d 1106. In *Turner*, the Court analyzed improper conduct in light of Restatement § 767. Section 767 provides:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference, and

(g) the relations between the parties.

*Id.*

In light of the above listed factors, we conclude that defendant Graham's conduct was not improper and that he did not employ wrongful means in this case. As stated above, it is not disputed that defendant Graham was acting as an attorney. As an attorney, defendant Graham was required to make a full and complete investigation of his clients' allegations before filing a lawsuit against plaintiff in their behalf. These facts lend credence to defendant Graham's actions in investigating and pursuing claims on behalf of his clients and justifies his actions. Accordingly, defendant Graham was justified in contacting as many potential witnesses and persons connected to the case as necessary.

An attorney has the right to give legal advice concerning the enforceability of contracts to protect the rights of clients during contract disputes. An attorney who in good faith counsels a client to breach a contract with a third party must not be hindered or impeded by fear of retaliatory lawsuits brought by the third party against him or her personally. *See Schott v. Glover*, 109 Ill.App.3d 230, 64 Ill.Dec. 824, 440 N.E.2d 376 (1982). In this case, if defendant Graham counseled his clients to breach their contracts with plaintiff, there is nothing in the record to indicate that defendant Graham did so other than in good faith. Plaintiff fails to demonstrate that defendant Graham employed wrongful means or engaged in improper conduct in representing his clients.

Even if we assume that defendant Graham's conduct if performed by others might constitute inducement to breach of contract, the fact that defendant Graham was practicing his profession as an attorney confers a privilege which immunizes him from liability. Plaintiff has not established that defendant Graham abused that privilege by engaging in wrongful conduct which would be redressable by this court. Plaintiff has not established that defendant Graham tortiously interfered with its contracts. In accordance with the foregoing, defendants are entitled to summary judgment on plaintiff's claims.

■ If we had concluded that defendant Graham's actions in this case were not privileged, we would conclude that defendants are entitled to judgment as a matter of law because plaintiff has not shown that defendant Graham induced any of the students to breach their contracts. Defendant Graham's actions thus were not the proximate cause of plaintiff's alleged injuries.

Plaintiff asserts that defendant Graham induced or caused the fifteen students to quit school and cease paying tuition by calling them and conducting meetings concerning possible legal action against plaintiff. Plaintiff alleges that defendant Graham's actions caused an "unprecedented" number of students to quit school during the spring term, 1988. Plaintiff attempts to tie the phone calls and the meetings to this unprecedented drop-out rate through the deposition testimony of the fifteen students—the ones for whom it claims damages—and of several students who remained in plaintiff's court reporting program. We conclude, after reviewing the materials, that they do not show that the actions of defendant Graham induced any of the fifteen students listed in the pretrial order to breach their contracts with plaintiff.

A review of the relevant deposition testimony discloses that several of the students actually had ceased attending school and paying tuition before they met or spoke with defendant Graham. Five of the students testified in their depositions that they had stopped attending school before they had learned of, or had talked to, defendant Graham. A number of the students testified that they had initiated contact with Graham after learning that he had been involved in a lawsuit involving a court reporting student and plaintiff and had been approached by fellow students regarding other possible suits. Three students testified that they had contacted other attorneys about suing plaintiff before they spoke to defendant Graham. Not one of the fifteen students for which plaintiff is seeking damages testified that they were induced or convinced to quit school by Graham, his telephone calls, or the meetings. All fifteen students testified that they had terminated their association with plaintiff voluntarily because they were dissatisfied with plaintiff's court reporting program.

Because plaintiff cannot show that defendants induced any of the fifteen students listed in the pretrial order to quit school or cease paying tuition, it cannot show that defendants intentionally interfered with its contracts or were the proximate cause of its alleged injuries. Accordingly, for these reasons also, we conclude that defendants are entitled to judgment as a matter of law on plaintiff's claims.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 175) is granted. The case is dismissed.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Doc. 206) is denied.

IT IS SO ORDERED.