**John Clark SCHARTZ, Plaintiff,**

**v.**

**UNIFIED SCHOOL DISTRICT NO. 512, and Blanche Banks, Defendants.**

**Civil Action No. 95–2491–EEO.**

United States District Court, D. Kansas.

Jan. 16, 1997.

Kurt D. Tilton, Brian L. Smith, Smith & Tilton, P.C., Kansas City, MO, for plaintiff.

Patricia A. Bennett, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, for defendants.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on defendant's motion for summary judgment (Doc. # 58) and defendant's motion to strike (Doc. # 76). For the reasons set forth below, defendant's motion for summary judgment on counts I, III, IV, V, and VI will be granted, defendant's motion for summary judgment on count II will be denied, count II will be dismissed without prejudice, and defendant's motion to strike will be denied in part as moot and granted in part.

### Factual Background

Plaintiff has brought this action claiming that defendants forced him to retire from his teaching position. Plaintiff's Amended Complaint includes claims of age discrimination, breach of contract, and wrongful termination against the Shawnee Mission School District, Unified School District No. 512 (the "District"). Plaintiff's Amended Complaint also includes claims of intentional interference with contract or business expectancy and intentional infliction of emotional distress against Blanche Banks, who has been principal of Shawnee Mission North High School ("North") since 1985.

For purposes of this opinion, the following is a brief summary of the material facts that are uncontroverted or deemed admitted, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.[1]

---

1. Counsel for plaintiff should note the requirement of District of Kansas Rule 56.1 that each fact stated shall refer with *particularity* to those portions of the record upon which the party relies. References to multi-page exhibits and entire depositions or affidavits do not comply with this rule. Such references are not helpful to the court or the opposing party. In addition, plaintiff's verification page at the end of his summary judgment opposition, which states that all

Plaintiff John Clark Schartz worked as a teacher for the District for twenty-nine years. Mr. Schartz taught Biology and Environmental Education. From 1981 through 1987, there were at least six documented complaints of plaintiff's classroom conduct. These complaints ranged from plaintiff's alleged use of profanity in class to alleged inappropriate sexual conduct and statements.

From Spring 1994 through Spring 1995, several students raised complaints to Ms. Banks about plaintiff's conduct. In April 1994, a female student alleged (1) that plaintiff, in response to the student's comment, stated "Reproduce, Reproduce! Do you go up to your mom and say 'I reproduce'? Do you have sex? Do you go up to your mom and say, 'Hey Mom, I have sex'? Just lie and say 'no,' because we all know you really do."; (2) that she felt humiliated because plaintiff also insisted on discussing her sex life in front of class after she requested to discuss the issue after class; (3) that plaintiff told a male student in class, "Don't worry, we all know you are sterile."; and (4) that she was offended because plaintiff would use women's bodies as analogies to the cells they would look at under the microscope. Ms. Banks and plaintiff met to discuss the student's complaints. Plaintiff denied making any inappropriate remarks. Although plaintiff could not remember what he said in class, he contended that his remarks were taken out of context. Ms. Banks and the associate principal advised plaintiff that the student wanted to be transferred from his class and that further incidents could result in discipline including termination.

On September 30, 1994, a female student complained that plaintiff said "I'll bet you're sweet 16 and never been kissed." The student claimed to be embarrassed and uncomfortable by these and other remarks and requested to transfer from plaintiff's class. Plaintiff concedes that he made the statement, but he claims that the statement is a common phrase and was not intended to embarrass the student. Plaintiff also claims he was denied the opportunity to participate in meetings with the student and her parents.

On October 20, 1994, a student complained that plaintiff had been sarcastic and used loud, inappropriate language. After the student failed to answer certain questions and another student correctly answered, plaintiff turned to the student and said "Why can't you say that?" Plaintiff also was angry at the student because of her use of a recorder and told her he would "break that damned machine." Ms. Banks and plaintiff met to discuss the student's complaint. Ms. Banks documented the student's complaint and plaintiff's response, but she did not formally reprimand plaintiff at the time. Ms. Banks advised plaintiff that further actions of this sort could lead to discipline up to and including termination.

On December 22, 1994, an African American female student and her mother complained (1) that the student was uncomfortable when plaintiff told the class he knew a "negro girl" who had a relative born with both a penis and vagina, and (2) that plaintiff made a comment in class implying that the student would be receiving a failing grade. Plaintiff admits that he made these comments but contends that he had no racial intent by using the word "negro" and that the comment about the student's grade was in response to the student's failure to come to class several times and failure to pay attention to directions. Ms. Banks, the student, the student's mother, and plaintiff met to discuss the complaints. A plan was devised during the meeting for plaintiff to work with the student, and plaintiff thought the problem was worked out. The student attended only one more class at North. On approximately January 6, 1995, Ms. Banks prepared a letter of reprimand to plaintiff stating that his conduct was inappropriate and unprofessional.

On January 26, 1995, a female student voiced a number of allegations involving plaintiff. First, she alleged that plaintiff had asked the students in his environmental education class to write letters of support for

information contained therein is "true and correct to the best of his knowledge and belief," is insufficient. Plaintiff must present facts based on an affidavit or declaration under penalty of perjury.

him and post-date the letters. When the student approached plaintiff about his request, plaintiff responded that he could not understand why she would not write a letter for him. Plaintiff also asked the student if she believed the allegations of sexual harassment. Next, the student alleges that during a discussion of whether a woman could have one breast larger than the other breast, plaintiff told the students that they could measure breast size by water displacement. Plaintiff lifted two buckets of water and told the student to lift her blouse. Further, the student claims that plaintiff touched her across her mid-section, stood too close when he talked to her, and gave her a "creepy" feeling. Finally, the student's mother complained that plaintiff allowed the student to leave campus without permission. Plaintiff, Ms. Banks, and Dr. David Stewart, Associate Superintendent of the District, met to discuss these complaints. Plaintiff denied the above actions. Dr. Stewart advised plaintiff that he would need to investigate the allegations.

On February 16, 1995, Mr. Steve Martin, counsel for the District, sent plaintiff's counsel a letter explaining that plaintiff's upcoming meeting with Mr. Robert DiPierro, Deputy Superintendent of the District, would be his final opportunity to present his position. This letter also explained plaintiff's options to appeal should the District suspend, terminate, or not renew plaintiff's contract.

On or about February 28, 1995, Mr. DiPierro and other District representatives met with plaintiff, his attorney, and plaintiff's representative from the KNEA. At the beginning of the meeting, Mr. Martin, counsel for the District, announced that the hearing was a "pre-termination" hearing. After the meeting, plaintiff's representative from the KNEA told him that, based on the District's actions at the meeting and her experience, she thought the District would fire plaintiff or not renew his contract. Shortly after the meeting, counsel for the District advised plaintiff's counsel that the District was seriously contemplating termination. The parties dispute whether plaintiff relied on this statement in deciding to retire. On or about March 3, 1995, plaintiff chose to retire in order to protect his health insurance benefits for his wife. Plaintiff was 57 years of age when he retired.

### Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. Id. at 252, 106 S.Ct. at 2510.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his plead-

ings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1.

With respect to plaintiff's state law claims, we ascertain and apply Kansas law with the objective that the result obtained in federal court will be the same result as in a Kansas court. *See Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir.1992).

## I. Age Discrimination.

In Counts I and VI of his Amended Complaint, plaintiff alleges that the District discriminated against him, on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq., and the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. § 44–1110, et seq. Defendant has moved for summary judgment on both of these claims. The court will consider the ADEA and KADEA claims together because the framework and analysis for ADEA and KADEA claims are identical. *See Kansas State Univ. v. Kansas Comm'n on Civil Rights,* 14 Kan.App.2d 428, 796 P.2d 1046 (1990).

To establish a prima facie case under the ADEA, a plaintiff must show that: (1) he was within the protected class; (2) he was performing his work satisfactorily; (3) he was discharged; and (4) his position was filled by a person who was substantially younger. *Branson v. Price River Coal Co.,* 853 F.2d 768, 770 (10th Cir.1988); *see O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). The "protected class" for purposes of the ADEA is that class of individuals who are at least 40 years of age. 29 U.S.C. § 631(a). Defendant concedes that plaintiff can make a prima facie showing on the first and fourth elements.[2]

### A. *"Discharge" Of Plaintiff.*

■ Mr. Schartz was not discharged by the District, rather he voluntarily retired. Therefore, he must rely on the theory of constructive discharge to meet the third element of a prima facie case. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 529 (10th Cir.1994) (" 'Discharge' by an employer is an essential statutory element of the prima facie case."). To establish constructive discharge, plaintiff must present evidence from which the jury could find that "a reasonable [person] would view the working conditions as intolerable." *Hirschfeld v. New Mexico Corrections Dep't,* 916 F.2d 572, 580 (10th Cir.1990) (quoting *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986)). The standard used for determining if a constructive discharge occurred is whether a reasonable person in the employee's position would have felt compelled to resign. *Acrey v. American Sheep Indus. Assoc.,* 981 F.2d 1569 (10th Cir.1992) (citing *Derr,* 796 F.2d at 344); *see Irving v. Dubuque Packing Co.,* 689 F.2d 170, 172 (10th Cir.1982). "Intolerable working conditions" are not created exclusively by harassment or physical discomfort, but may be created "where an employer simply ma[kes] plain its desire to be rid of a

---

**2.** To the extent plaintiff's Amended Complaint can be read to state a hostile work environment claim, the court grants summary judgment in favor of defendant. Plaintiff did not respond to defendant's arguments on this point. In addition, the court finds that there were insufficient age-based comments to maintain such a claim. *See Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 562 (D.Kan.1995) (citations omitted).

particular employee." *Anderson v. Montgomery Ward & Co., Inc.,* 650 F.Supp. 1480, 1484 (N.D.Ill.1987). The fact that an employee was happy at his job and worked harmoniously with his co-workers does not preclude a finding of constructive discharge. *See Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 467 (10th Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990).

■ Many courts, including the Tenth Circuit, have found that a plaintiff can establish a claim based on constructive discharge by proving that he was given a choice between retirement or termination. *Burks v. Oklahoma Publishing Co.,* 81 F.3d 975, 978 (10th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *Acrey,* 981 F.2d at 1573; *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1154 (10th Cir.1990); *Downey v. Southern Natural Gas Co.,* 649 F.2d 302, 305 (5th Cir.1981). For example, in *Downey,* the Fifth Circuit stated:

> Downey asserts that his superiors specifically advised him that he *might be* discharged, with a consequent loss of benefits. We regard that testimony as sufficient to create a contested issue of material fact regarding constructive discharge. A reasonable person might well feel compelled to resign in the face of such a statement.

649 F.2d at 305 (emphasis added). A plaintiff is not required to prove that he was faced with certain termination, termination that is "likely" or "probable" if the employee does not retire will suffice.[3]

■ Here, plaintiff claims that he was faced with the choice between retirement with health benefits or termination without health insurance benefits. Defendant denies that plaintiff was ever presented with this choice by the District, rather plaintiff voluntarily retired. Given the totality of circumstances and viewing the evidence in the light most favorable to plaintiff, the court finds that there is sufficient evidence for a jury to conclude that plaintiff reasonably assumed that his choice was between retirement with health insurance benefits or termination without health insurance benefits. On February 16, 1995, Mr. Martin, counsel for the District, sent plaintiff's counsel a letter explaining that plaintiff's upcoming meeting with Mr. DiPierro would be his final opportunity to present his position. This letter also explained plaintiff's options to appeal should the District suspend, terminate, or not renew plaintiff's contract. At the meeting on or about February 28, Mr. Martin announced that the meeting was a "pre-termination" hearing. After the meeting, plaintiff's representative from the KNEA told him that, based on the District's actions at the meeting and her experience, she thought the District would fire plaintiff or not renew his contract. Shortly after the meeting, counsel for the District also advised plaintiff's counsel that the District was seriously contemplating termination. The court concludes that a reasonable person may have felt compelled to retire in such circumstances. *See supra* note 3.

B. *Plaintiff's Satisfactory Job Performance.*

■ Defendant contends that plaintiff cannot establish the second element of a prima facie case, i.e., he was performing his work satisfactorily at the time of discharge. Although the student complaints, if true, may suggest unsatisfactory performance, defendant has failed to offer sufficient evidence to show that plaintiff cannot meet his prima facie burden as a matter of law. Defendant must do more than establish that complaints involving Mr. Schartz were made, investigated, and determined by the District to be valid. In addition, the Tenth Circuit has held that a plaintiff must make only a minimal showing that his performance was satisfactory, not flawless, to meet his prima facie burden. *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1420–21 (10th Cir.1991) (employer can raise performance issues in rebut-

3. *Downey,* 649 F.2d at 305 (5th Cir.1981) (choice between possible termination and retirement); *Jarvenpaa v. Glacier Elec. Co-op., Inc.,* 271 Mont. 477, 898 P.2d 690, 694 (1995) (same); *Lasley v. Veterans Admin.,* 789 F.Supp. 1468, 1475–76 (E.D.Mo.1992) (choice between retirement and facing termination proceedings); *Anderson,* 650 F.Supp. at 1485 (choice between likely termination and retirement); *see Burks,* 81 F.3d at 978 (constructive discharge may be established by showing that "the employer's actions reasonably lead the employee to conclude that, if she does not resign, she will be discharged.").

tal of plaintiff's prima facie case). Plaintiff has offered sufficient evidence in the form of affidavits and his 29 year performance record to show that he was performing his work satisfactorily.

### C. Defendant's Alleged Reasons For Plaintiff's Termination And Plaintiff's Evidence Of Pretext.

Plaintiff has offered no direct evidence of age discrimination. Thus, the court must analyze plaintiff's claim under the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *See Hartig v. Safelite Glass Corp.*, 819 F.Supp. 1523 (D.Kan.1993). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of age discrimination. *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). By establishing this prima facie case, the plaintiff creates a presumption of unlawful discrimination that requires the defendant to produce evidence of a nondiscriminatory reason for its actions. *Id.* at 254–55, 101 S.Ct. at 1094–95. The plaintiff then has the burden of showing that the defendant's proffered reasons are not its true reasons but are pretextual for age-based discrimination. *Id.* at 252–53, 101 S.Ct. at 1093–94. The ultimate burden of persuasion of proving intentional discrimination remains at all times with the plaintiff. *Id.* at 252–53, 101 S.Ct. at 1093–94. In this case, defendants' offered reason for termination is plaintiff's unsatisfactory job performance based on five student complaints made between April 1994 and January 1995.

### 1. Pattern of Discriminatory Conduct.

■ Plaintiff argues that he has presented sufficient evidence of a pattern of discriminatory practices to withstand defendant's summary judgment motion. Data showing a pattern of conduct towards a protected class must show a significant disparity in defendant's treatment of the protected class and must eliminate non-discriminatory reasons for this treatment. *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir.1991); *see*

*Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1456 (10th Cir.1994).

■ Plaintiff has failed to establish that defendant's offered reasons for termination are a pretext for age-based discrimination. First, plaintiff has not presented evidence of a significant disparity in the District's treatment of its employees. In fact, plaintiff has failed to offer any comparative evidence to establish a disparity between the District's treatment of younger and older employees. Plaintiff has offered only the conclusory affidavits of nine teachers who quit or retired over a ten-year period who believed that they were treated unfairly because of their age. This group is too small to provide reliable statistical results. *See Fallis*, 944 F.2d at 746 (small sample size of 9 carries little or no probative force to show discrimination). Plaintiff's statistical evidence gives a very limited picture. Plaintiff does not specify the total number of teachers at North, the number of teachers over the age of forty that left during this ten-year period and the number of employees under the age of forty who left during this same period. Finally, the conclusory affidavits of several retired teachers stating that they "perceived" that older teachers were treated differently than younger teachers is insufficient. Plaintiff has failed to offer specific comparative evidence establishing that younger employees were treated differently than older employees. Given the absence of any comparative analysis between similarly situated individuals and the small sample size, the court gives very little weight to the affidavits submitted by plaintiff.

Second, plaintiff's "statistical data" utterly fails to eliminate non-discriminatory reasons for the District's actions. Plaintiff has failed to show by his statistical data that the District's actions against these other individuals were caused by intentional discrimination because of age. *See Rea*, 29 F.3d at 1456. The mere fact that nine employees over a ten-year period were replaced with younger teachers does not establish age discrimination. Employers will replace older employees with younger employees as part of a natural process that often can be explained absent any discriminatory intent. *See Kep-*

*hart v. Institute of Gas Tech.*, 630 F.2d 1217, 1224 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981) ("It is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they.") (quoting *Laugesen v. Anaconda Co.,* 510 F.2d 307, 313 (6th Cir.1975)). Plaintiff has not presented sufficient evidence to establish a pattern of discriminatory conduct.

### 2. Statements Of Discriminatory Intent.

█ Plaintiff also contends that statements made by Ms. Banks and District personnel suggest that age was a factor in the termination decision. Plaintiff presents the following alleged statements: (1) Ms. Banks stated with respect to a former teacher at North over the age of 40 that "we ought to go up to the hospital and really add to his condition;" (2) Ms. Banks stated in defense of her recommended salary freeze that she ran off Mr. Hedge through the school's "grow or go" policy; and (3) Ms. Banks stated that "I am going to get Ailo Paul" who was over the age of 40.[4]

█ The alleged statements appear to be isolated, stray, and ambiguous remarks. Even if the court considers the hearsay statements, only one statement even contains a derivation of the terms "age," "old," or "retire." There is no evidence to suggest that the individual involved in plaintiff's employment decision made the statement. In addition, the statement was not directed at Mr. Schartz. The statement clearly is insufficient by itself to establish that age was a factor in the decision to terminate plaintiff. Salary considerations are not evidence of pretext unless plaintiff can establish that the salary system was predicated on some age-based stereotype. *See E.E.O.C. v. Francis W. Parker School,* 41 F.3d 1073, 1078 (7th

Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1994); *Thomure v. Phillips Furniture Co.,* 30 F.3d 1020, 1024 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1255, 131 L.Ed.2d 135 (1995). Plaintiff has failed to present any evidence on this point. Finally, the alleged statements do not establish that defendant's offered reason for plaintiff's termination is pretextual. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in [employment] decisions." *Rea,* 29 F.3d at 1457 (quoting *Cone,* 14 F.3d at 531). Ambiguous remarks that include the names of individuals who happen to be over the age of forty are too vague and abstract to support a claim for age discrimination. *See Cone,* 14 F.3d at 531. Even plaintiff conceded in his deposition that one of the above statements only shows at most that Ms. Banks did not like the individual, *not* that age was a factor. The alleged statements made over a significant time period fail to establish that the District or Ms. Banks made employment decisions based on age either generally or specifically with respect to Mr. Schartz.

### 3. Procedural Irregularities.

█ Plaintiff points to a number of procedural "irregularities" in an attempt to establish that age was a factor in defendants' actions. Plaintiff first argues that Ms. Banks and Dr. Stewart called plaintiff into an unannounced meeting and did not allow plaintiff to be represented. Plaintiff has not established that the normal or required procedure was to give advance notice or to allow representation for such meetings. The meeting was held shortly after an additional student complaint was filed in late January of 1995. Nothing suggests that this meeting was irregular under the circumstances.

---

**4.** Plaintiff also relies on two additional alleged statements: (1) Ms. Banks was "congratulated on getting Plaintiff" after he was hospitalized and responded that "he is just the first of many," and (2) a District representative stated "it would be cheaper for the District to get rid of the older teachers, and that the District could hire two younger or new teachers for what the District pays one older, or experienced teacher" and that "we could get rid of two at every school." The affidavits supporting both of these statements are based on inadmissible hearsay. *See* Bockelman, Schneider, and Farson Affidavits. Further, the Bockelman and Schneider affidavits do not identify either who repeated the statement or who originally made the statement. The court accordingly will strike ¶ 10 of the Bockelman Affidavit, ¶ 3 of the Schneider Affidavit, and ¶ 5 of the Farson Affidavit.

■ Next, plaintiff argues that defendants failed to follow the disciplinary procedures set out in his employment contract. Plaintiff claims that he should have been placed on out-of-cycle evaluation and given intensive assistance before termination according to his contract. This allegation appears to be more appropriate in support of a breach of contract claim. In addition, the court finds that the District's actions were not so inconsistent with the contractual provisions as to suggest discrimination. The contractual provision referenced by plaintiff pertains to personnel evaluation, not discipline. The contractual provision regarding discipline provides that "[d]isciplinary actions will be commensurate with the infraction. Evaluation will not be used as a disciplinary tool." Thus, the District was prohibited from using evaluation mechanisms such as out-of-cycle evaluation as disciplinary measures.

Plaintiff also claims that defendants did not verify the various student complaints or check the credibility of the students making the complaints. The uncontroverted evidence establishes, however, that plaintiff admitted making several of the remarks. In other instances, plaintiff could not recall if he made the remarks. In addition, defendants are not obligated to provide plaintiff with the most extensive procedural due process safeguards. Ms. Banks' investigations of the various complaints certainly were not so irregular as to suggest discrimination.

In sum, the court finds that plaintiff has not presented sufficient "disturbing procedural irregularities" that could imply that age was a motivating factor in defendants' actions. *See Cone,* 14 F.3d at 532.

### 4. *Embellishment of Student Complaints.*

■ Plaintiff claims that Ms. Banks embellished and even fabricated student complaints to force older teachers to retire. Plaintiff's evidence to support this contention amounts only to his belief that Ms. Banks took student complaints as true without understanding the full context of the situation. Plaintiff has offered no evidence that Ms. Banks acted in this manner to force him to retire or because of his age. Plaintiff also has offered no comparative evidence to show that younger teachers were not treated in a similar manner. Further, plaintiff concedes that he had the opportunity to add his written response to the student complaints but he chose not to do so. In one instance, plaintiff admitted that his side of the story was basically contained in Ms. Banks' written report. Finally, plaintiff himself could not identify what Ms. Banks should have done differently in investigating a complaint.

Plaintiff simply has not presented sufficient evidence for a jury to conclude that defendant's offered reason for plaintiff's termination was pretextual for age-based discrimination. The court accordingly grants summary judgment in favor of the District on plaintiff's age discrimination claims (counts I and VI).

## II. Supplemental Jurisdiction Over State Law Claims.

■ Plaintiff's remaining claims are all state law claims. Given that no federal question remains in this case and diversity jurisdiction does not exist, the court in its discretion declines to exercise supplemental jurisdiction over plaintiff's breach of contract claim. 28 U.S.C. § 1367; *see Sullivan v. Scoular Grain Co.,* 930 F.2d 798, 802–03 (10th Cir.1991). The court cannot resolve plaintiff's breach of contract claim as a matter of law without further proceedings. The court cannot find, and the parties have not noted, any unusual circumstances in this case justifying the court's retention of jurisdiction over this claim. *See Gullickson v. Southwest Airlines Pilots' Ass'n,* 87 F.3d 1176, 1187 (10th Cir.1996) (state claims generally should be dismissed if all of the federal claims are dismissed before trial) (citation omitted). The court accordingly will dismiss plaintiff's breach of contract claim (count II) without prejudice.

In contrast, the court will retain supplemental jurisdiction over plaintiff's other state law claims. Plaintiff's other state law claims can be easily resolved without further proceedings and thus the court's exercise of supplemental jurisdiction over these claims is appropriate. *See Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1251–52 (7th Cir. 1994) (citing *Brazinski v. Amoco Petroleum*

*Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993)); *see also Southerland v. Hardaway Mgmt. Co.,* 41 F.3d 250, 256–57 (6th Cir.1994) (the court has discretion to decide some state law claims on the merits while dismissing without prejudice other state law claims); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper Federal Practice and Procedure § 3567.1 (Supp.1996) (same).

## III. Wrongful Termination.

 Plaintiff alleges that the District terminated plaintiff based on age, race, and/or gender in contravention of Kansas public policy. Defendant moves for summary judgment on this count because plaintiff has an adequate remedy under the ADEA and KADEA. Plaintiff did not contest defendants' argument in his opposition brief. This court has held previously that a cause of action for wrongful discharge does not exist if the discharged employee has an alternative remedy under either state or federal law (i.e. ADEA or KADEA). *See Polson v. Davis,* 895 F.2d 705, 708–09 (10th Cir.1990). Because plaintiff has such alternative remedies, the court will grant summary judgment in defendants' favor on plaintiff's wrongful discharge claim (count III).

## IV. Intentional Interference With Contract Or Business Expectancy.

 Plaintiff has brought a tortious interference with contract or business expectancy claim against defendant Banks. In order to maintain a cause of action for tortious interference with an existing contract, plaintiff must establish: (1) the existence of a contract with the District; (2) knowledge of the contract by Ms. Banks; (3) an intentional interference by Ms. Banks with the known contract rights without legal justification; and (4) resulting damage. *Brown Mackie*

*College v. Graham,* 768 F.Supp. 1457, 1460–61 (D.Kan.1991), *aff'd,* 981 F.2d 1149 (10th Cir.1992); *see Turner v. Halliburton Co.,* 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986); *Taylor v. Hoisting & Portable Eng'rs Local Union 101, AFL–CIO,* 189 Kan. 137, 139, 368 P.2d 8, 10 (1962) (citing Restatement of Torts § 766).[5] A tortious interference with contract or business expectancy claim is "predicated on malicious conduct by defendant." *Turner,* 240 Kan. at 12, 722 P.2d at 1115. Defendant Banks concedes for purposes of her motion that plaintiff can establish the first, second, and fourth elements.

 To meet the third element, plaintiff must establish that Ms. Banks induced or caused plaintiff's constructive discharge. *See Turner,* 240 Kan. at 12, 722 P.2d at 1115; *Brown Mackie College,* 768 F.Supp. at 1462–63. Defendant maintains that plaintiff has failed to show that Ms. Banks actually interfered with plaintiff's contract. As noted previously, plaintiff has presented sufficient evidence to establish that the District gave plaintiff the choice between retirement and termination. Plaintiff has failed, however, to present any evidence that Ms. Banks caused the District to force plaintiff to choose between retirement and termination. The record evidence establishes only that Ms. Banks recommended that plaintiff receive a two-day suspension without pay. Plaintiff's evidence simply does not establish that Ms. Banks' actions were the proximate cause of the District's decision to give plaintiff the choice between retirement and termination. *See Brown Mackie College,* 768 F.Supp. at 1462–63 (no liability where defendant's actions were not the proximate cause of the contract termination).[6]

 Defendant Banks also claims that plaintiff's tortious interference claim must

---

5. Plaintiff also maintains that defendant Banks interfered with his future expectancy of teaching until the age of 65. The elements of plaintiff's case and the defenses at issue in the present motion are identical whether plaintiff's claim is tortious interference with a present contract or tortious interference with a future business expectancy. *See* Restatement (Second) of Torts §§ 766, 766B; *Turner,* 240 Kan. at 12, 722 P.2d at 1115. The court accordingly will address both claims together.

6. On a closely related factual issue not briefed by either party, plaintiff apparently cannot establish Ms. Banks' intent. There is no record evidence to show that Ms. Banks intended for the District to give Mr. Schartz the choice between retirement and termination or that she knew that such a result was substantially certain. *See* Restatement (Second) of Torts § 766, comments h, j.

fail because her actions were privileged. The Kansas Supreme Court has recognized that some interferences with contractual relations are privileged. *Turner,* 240 Kan. at 12–14, 722 P.2d at 1115–17; *see May v. Santa Fe Trail Transp. Co.,* 189 Kan. 419, 424–25, 370 P.2d 390, 395 (1962). An employee such as a supervisor is privileged to advise or induce her employer to breach a contract with another employee. *May,* 189 Kan. at 424–25, 370 P.2d at 395; *Brown Mackie College,* 768 F.Supp. at 1461. After the defendant presents evidence of a qualified privilege, plaintiff has the burden to prove that defendant acted with "actual malice" or employed "improper means." *See Turner,* 240 Kan. at 13–14, 722 P.2d at 1116–17 (citing Restatement (Second) of Torts § 767); *Batt v. Globe Eng'g Co., Inc.,* 13 Kan.App.2d 500, 507–08, 774 P.2d 371, 377 (1989).

■ Here, Ms. Banks, a principal and employee of the District, was privileged to advise or induce the District to terminate plaintiff's contract. Plaintiff has failed to offer sufficient evidence of actual malice or improper means to overcome defendant's qualified privilege. Plaintiff's evidence of malice amounts only to his belief that Ms. Banks tended to side with the students, took the student complaints as true with very little investigation, and did not fully consider the context of plaintiff's comments. Although these actions, if true, may imply that Ms. Banks was unfair, these actions do not rise to the level of "actual malice" under Kansas law. *See Batt,* 13 Kan.App.2d at 506–08 (plaintiff must do more than present evidence inferring malice).

In addition, plaintiff has failed to show sufficient evidence of improper means to overcome defendant's qualified privilege. Kansas courts often look to the following factors to determine whether a defendant employed improper means:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interest in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference, and

(g) the relations between the parties.

Restatement (Second) of Torts § 767; *see Turner,* 240 Kan. at 14, 722 P.2d at 1116–17.

■ Applying the above factors to this case, the court finds that plaintiff has presented insufficient evidence for a jury to conclude that defendant employed "improper means." Ms. Banks was plaintiff's supervisor and her actions appear to be consistent with her duties as a high school principal. Ms. Banks' recommendation of a two-day suspension without pay cannot be considered wrongful given the number of student complaints, plaintiff's response to those complaints, and the authority of a high school principal. The evidence before the court suggests that Ms. Banks sought to protect the students and ensure that only high quality teachers remained in the classroom. There is certainly a strong social interest to promote such conduct. Plaintiff has presented no evidence of evil motive or malice. Indeed, plaintiff has not offered any evidence that Ms. Banks intended that the District give plaintiff the choice between retirement and termination or that she knew such a result was probable. *See supra* note 6. Further, the remoteness of Ms. Banks' recommendation of a two-day suspension from the District's decision favors defendant. In sum, plaintiff has not presented sufficient evidence to establish that Ms. Banks employed improper means or acted with actual malice. For all of the above reasons, the court will grant summary judgment in favor of defendant Banks on plaintiff's intentional interference with contract claim (count IV).

## V. Intentional Infliction of Emotional Distress.

■ Defendants seek summary judgment on plaintiff's claim of intentional infliction of emotional distress or outrage. To prevail on his claim, plaintiff must present evidence that (1) the conduct of the defendant was intentional or in reckless disregard of plaintiff; (2) the conduct was extreme and outrageous; (3)

there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) plaintiff's mental distress was extreme and severe. *Roberts v. Saylor*, 230 Kan. 289, 292, 637 P.2d 1175, 1179 (1981). Plaintiff also must meet two threshold requirements to maintain a claim for outrage. The court must be convinced that reasonable fact finders might differ as to "(1) [w]hether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Id.*, 230 Kan. at 292–93, 637 P.2d at 1180. In Kansas, these threshold requirements are substantial and can be surmounted only in rare cases of significantly egregious circumstances.

▆▆ The court finds that plaintiff has failed to meet the first threshold requirement. Plaintiff has not established that defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. In *Roberts*, the court admonished that "liability may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.... [L]iability may be found to exist generally in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, 'Outrageous!'" 230 Kan. at 293, 637 P.2d at 1179 (citing *Dotson v. McLaughlin*, 216 Kan. 201, 531 P.2d 1 (1975)); *see Taiwo v. Vu*, 249 Kan. 585, 592–93, 822 P.2d 1024, 1029 (1991). The Kansas Supreme Court further cautions that "liability does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities." *Roberts*, 230 Kan. at 293, 637 P.2d at 1179. Liability for the tort of outrage rarely arises in the discrimination and harassment context. *See Bolden v. PRC Inc.*, 43 F.3d 545, 554 (10th Cir.1994), *cert. denied,* ——

U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995); *Moten v. American Linen Supply Co.*, 155 F.R.D. 202, 205 (D.Kan.1994) ("Employment discrimination by itself, without aggravating factors like ethnic slurs and physical threats does not 'amount to outrage.'").

Plaintiff's outrage claim is based on his allegations that Banks engaged in a pattern of conduct targeting older teachers for retirement by hostility and harassment, that Banks accepted the allegations of the complaining students without meaningful investigation, and Banks had the propensity to side with complaining students regardless of the evidence when older teachers were involved. Plaintiff has not offered sufficient factual support for each of these allegations to preclude summary judgment on plaintiff's outrage claim.

Even if the court assumes the truth of each of plaintiff's allegations, defendant's alleged conduct certainly does not meet the stringent standard for an outrage cause of action. Banks' alleged actions even if true do not rise to the level of outrageous conduct. These actions do not resemble an "uncivilized barbarism." *Polson v. Davis*, 635 F.Supp. 1130, 1151 (D.Kan.1986) (quoting *Fletcher v. Wesley Med. Ctr.*, 585 F.Supp. 1260, 1262 (D.Kan.1984)), *aff'd*, 895 F.2d 705 (10th Cir. 1990). "Quite a bit more—such as the endless stream of vulgar, racist invective and threats of violence uttered by the defendant in *Gomez v. Hug*, 7 Kan.App.2d 603, 645 P.2d 916 (1982)—must accompany [these actions if they are] to be deemed 'outrageous.'" *Polson*, 635 F.Supp. at 1151 (quoting *Fletcher*, 585 F.Supp. at 1262). Having found that plaintiff has failed to meet the first threshold requirement for an outrage claim, the court need not address the second threshold requirement. Defendant is granted summary judgment on plaintiff's claim for intentional infliction of emotional distress (count V).[7]

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #58) on counts I, III, IV, V, and VI is granted, defendant's motion for summary judgment (Doc. #58) on count II is denied, count II of plaintiff's Amended Complaint is

---

7. Given the court's ruling on plaintiff's two state law tort claims, the court need not address plaintiff's compliance with the notice requirements of Kan.Stat.Ann. § 12–105b(d).

dismissed without prejudice, and defendant's motion to strike (Doc. #76) is denied in part as moot and granted in part as provided in this order.